We'll now hear the final oral argued case on the calendar, Kellogg v. Michigan Millers Mutual Insurance. Thank you. May it please the court, Dan Cohen on behalf of the appellant and Apple, across Apple E, Michigan Millers Mutual. Let me just say on behalf of all of us who have sat and listened to the arguments today, thank you to the court for enabling us to appear this way. Thank you. It sure makes life a lot easier for all of us, and I know it's a challenge for everybody, but thank you. I just wanted to say that, and I'm sure all the lawyers feel the same. We have two appeals here before you, an appeal and a cross appeal. So I'm going to speak to, first, on my appellate issues, appellant issues. We believe that the court below, the magistrate judge below, erred in deciding that Kellogg qualified for SUM, Supplementary Uninsured Underage Motorist Coverage, and MedPay coverage. The facts are not in dispute. I'm sure the court's aware of them. This gentleman pulls a vehicle out with his tow truck and then is kneeling on the ground in the process of disconnecting the winch cable from the strap, which was connected to the vehicle that he had pulled out of the ditch, when another vehicle comes along and this second vehicle, and causes injury. The standard for this coverage is whether or not Mr. Kellogg was occupying the tow truck at the time of the accident. Occupying means getting in upon or exiting from a motor vehicle, being in upon or exiting from a motor vehicle, and the district court found, the magistrate judge found, that Kellogg was upon the tow truck at the time of the accident, because he was in the process of detaching the winch cable. And in fact, there is no evidence before the court that he was in physical contact with the winch cable, the strap, or any other attachment, or, though it's undisputed, he had not yet completed detaching the strap from the vehicle at the time of the accident. Occupying, we suggest, requires that the claimant be vehicle oriented. It's a three-part test that the courts have established to determine whether or not a claimant who is outside a vehicle is vehicle oriented. And number one, the departure from the vehicle must be incident to a temporary interruption of the journey. The claimant must remain in the immediate vicinity of the vehicle, but for the interruption, the claimant would have continued the journey, and he intends to resume his place in the vehicle once the reason for the interruption is completed. Now, the courts in New York have been pretty clear on this, and the Martinez case, which the court, below, cites to and distinguishes, or tries to distinguish, I think is exactly on point. Here you had a petitioner who was struck by a hit-and-run vehicle while walking towards a disabled vehicle. He had been dispatched to assist. He also was a tow truck operator. And the court found that while the petitioner, while this... Mr. Hain, Mr. Hain, let me... This is Judge Russell. Let me ask you a couple of questions on your appeal side of this. If Mr. Kellogg had detached the cable and had turned and was walking back to get into the truck, would he be occupying the tow truck? Would he be occupying it under the Rice case, matter of Rice v. Aldergate? Well, that's a much better... Much closer argument, Your Honor, because then he is heading back to enter his truck. Okay. Well, okay. So, would you agree with me that that is a better case and more likely he is occupying? Yes, I would agree with you. Okay. All right. So, he's now standing next to the vehicle that he's pulled out, and he's just detached it, and he's turned 90 degrees, and he's facing back in the direction of his vehicle, ready to take the first step. Is he occupying the vehicle? I would say not, Your Honor. You would say not? I would say not. Well, how is that any different than what he was doing? I mean, he couldn't get back into his truck and use his truck until he completed disconnecting the winch cable and the... Excuse me, the cloth device that had been put around the wheel. He couldn't get back to resuming the use of his vehicle until he completed that, could he? No, he couldn't. So, that was essential to his returning to his vehicle and, once again, using it and occupying it, right? Well, certainly, at some point... He wasn't going to drive away and leave the sling there, was he? No, I'm not suggesting he would, Your Honor, but the point is... So, how is it then that he's not vehicle-oriented? He's doing everything that's necessary to get back to his vehicle. But the cases, for example, where someone is directing traffic and then intends to go back to their vehicle, the courts have found that... Well, that's not his case. These are all extraordinarily, in fact, intensive cases, and so I'm kind of sticking with this case. Okay. I'd be happy to do it, Your Honor. In this case, had he stood up and began walking towards his vehicle, I would concede that there'd be a better argument that he was vehicle-oriented. He wasn't doing that at the time. At this time, he was doing something that was oriented towards a different vehicle. Not... Oriented towards a different vehicle. What do you mean? Well, it was definitely oriented towards his because he was doing what he had to do to get back into his vehicle. But he... But just like somebody who's doing something... The sling is not part of the vehicle he pulled out of the ditch. The sling is a piece, a part of the mechanism that he employed by using the winch on his tow truck to extricate the vehicle from the ditch along exit 45 of the New York State Cureway. Your Honor, I appreciate that point. But I suggest... Okay. But I suggest to you it isn't just positive. Listen, I appreciate many things in life. This one I appreciate, but I suggest that it isn't just positive. I would... Mr. Golden, your time is up. But let me... And you've got your rebuttal. But let me ask you just two questions, and I'm going to turn you over to one of my colleagues, okay? I'm going to turn you over to Judge Bianco. As to your defense of the use and occupation and your reliance upon Walton, you paid first party benefits, right? First party benefits, I believe, were paid, Your Honor. Is not the definition of an insured for first party benefits exactly the same as the definition of an insured for additional PIP coverage? It is. So what kind of company is Michigan Millers? A good company, Your Honor. Is it a mutual company? It is, I believe, Your Honor. Don't your adjusters and your officers have an obligation, then, to those shareholders or a company not to pay claims you don't own? I'm sure they do, Your Honor. Then why did you pay the first party benefits since the definition is the same for the APIP which you now contest? Well, Your Honor, I can't answer that question because I wasn't involved at that time. Well, isn't that a concession that we should look to? No, I don't think so. Excuse me, excuse me. As to your understanding of the contract that you drew? Well, Your Honor, I would suggest that the benefits in this case are not payable for the reasons I outlined in my paper. So you paid, are you telling us that Michigan Millers paid first party benefits inappropriately? They may have, Your Honor. Oh, okay. I can't, you know, Your Honor, with all due respect, I cannot answer that question. I'm not familiar with that part. I wasn't handling the case at that time, so I can't answer the question. Well, but you're here. Well, where you are, I presume you're in Buffalo. I am. You're in the warm confines of your office, protected. I am, protected. And your firm is well known for its insurance work. I've had your firm in front of me many, many times. Very kind of you. In federal court. So you're telling, what's your view? Did your company pay benefits inappropriately? My view is that if they paid benefits in this case, Your Honor, I'm sure they paid benefits because they believed at the time they should have. Okay. But... Okay, let me ask you one last question. You read Walton to say that it introduces the idea of approximate cause, right? That's the language in Walton, Your Honor, yes. Yeah. In Judge Stein's opinion, I'm very familiar with it. Let me ask you this. If I'm driving down Main Street here at Geneseo, which is where I'm talking to you from, and there's a stoplight, and I have a green light, and I start to go through the intersection with the green light, and there's a recalcitrant fellow being chased by the Geneseo PD. Very able police officers, I might add. And he goes to the stop sign and broadsides me and injures me badly. The approximate cause is solely his vehicle. Am I using and occupying my vehicle and entitled to first-party benefits under your understanding of Walton? Of course you are. How's that? But my car has no approximate cause or relationship whatsoever to the injury. No, your use of the vehicle was approximate cause of the accident, Your Honor. This is not a negligence standard. There's no negligence standard in no-fault, as we all know. But your use of the vehicle, of that vehicle in which you were a passenger or the driver, was a cause of the accident. So that's it. Okay. Does the tow truck tow cars from the side of the road? I'm sorry, sir? Tow trucks tow cars from the side of the road? Indeed. And they pull cars out of ditches? Indeed. And other cars, sometimes rear-end cars that are for the side deck? Now it's state law that you have to go over to the other lane to avoid that, isn't it? I think so, yes. Okay. All right, I have no further questions. Thank you. Thank you. I'm sorry, it's Judge Bianco. I thought I was going to tell you who was going to ask you questions, but I didn't. I think, Judge Bianco, I apologize. No, that's okay. I think Chief Judge Caput is before me. Chief? Yes. Just a few questions. I'm trying to help you understand how you can distinguish your case looking at 20th Century. So if you look at the question of whether Kellogg's injuries arose out of his use or operation of a tow truck, the Fourth Department's decision in 20th Century seems like a and perhaps especially so given that the New York Court of Appeals in Walton cited 20th Century approvingly. You don't discuss 20th Century in your briefs, although the district courts seem to distinguish it on the grounds that the plaintiff there was pinned against his car. The New York courts have made clear that physical contact is not necessary, it's not to cause someone's injuries. So how then can you distinguish 20th Century? Well, in the 20th Century case, Your Honor, as you noted, the claimant was standing behind his vehicle parked just a few blocks from here on Elmwood Avenue in Buffalo when he was struck by another vehicle, and he was pinned between the two vehicles. So that's a different situation. He was preparing to open the trunk of his car to unload a box of books, and while he wasn't in physical contact with his vehicle, the keys to the trunk were in his hand. And in that situation, the court found that the benefits were available. And that's a different situation because here, the gentleman, the plaintiff, was not working on his car, he was not struck by, he was struck as a result of the conduct of the other vehicle, the vehicle that struck him. And maybe he should have applied for benefits to that car. Why he didn't, I don't know. But that's where he should have received his benefits. This is a different situation. I see it completely different. Let me follow up on Judge Westley's questions about whether Kelli was vehicle oriented at the time of the accident. And you've already touched on some of this. There's the second department's decision in Rosado and the third department's decision in Utis, which seem to pose challenges for you. And as I understand it, and correct me if I'm wrong, you try to distinguish these cases because the claimants there were not, the claimants there were occupying their vehicles for transportation purposes, whereas Kellogg was not. Yes. But consider this following hypothetical. A claimant is sleeping in a parked car and the car is rear-ended by another vehicle. Yes. The claimant gets out to exchange information with the driver who rear- ended him and he is struck by a passing vehicle. Yes. Why isn't the claimant still vehicle oriented, even though he was not occupying his vehicle for transportation purposes? Because he was about to go back, this was a temporary hiatus from his vehicle and was about to go back into his vehicle to continue his trip. That's a different situation that we have here. Here we have an employee, a tow truck operator, who had arrived at the scene, had left his vehicle and was doing something completely independent of the transportation, the journey in his vehicle. He was working on a car. He was working on a car that was pulled off on the side of the road. It is not a temporary hiatus, just like if he got out to, if he stopped at a corner and opened the door to dump out a cup of coffee or something, he may have not been operating his vehicle at the time, but he's still connected to the journey in his vehicle. So I see it as a different situation. Here there's a stoppage and a completely different task, just like the fellow who was directing traffic in the street. Now, what we do, what we've been discussing really are cases, of course, having to do with New York law. And while we have a case like Walton, which is a New York Court of Appeals case, much of the cases that all of us are looking to are cases of departments, distinguished departments, but not the highest law on New York State. And I'm just wondering, might there not be some sense in certifying to the broader understanding from the New York Court of Appeals as to what the term occupying means? Your Honor, I would have no objection to that. Thank you. You'll have, Mr. Coney, you'll have two minutes in the, oh, no, we go to Judge Bianco. I'm sorry. Judge Bianco. That's okay. Thank you. I just have one question, and it's picking up on my colleagues. I don't understand how you're distinguishing Rosado and Yudis. Even if you use this, that had to be for transportation use, in those cases you said, well, they were unloading boxes from their trucks in some way. Yes. But here you have, as Judge Westley pointed out, Mr. Kellogg was unloading this car that was attached to his truck and was going to get back into his truck and then drive away. So a tow truck transports cars. These other cases involve transporting goods, and in both situations they're unloading something and then they get back into their vehicle. This is taking the car off of the tow truck, right? Well, Your Honor, I don't see it that way. I guess I see taking beer out of the back of a car or whatever was happening in the Rosado case, rearranging empty cases of beer. I think that's still allowed in New York. I see that as a vehicle-oriented matter where he's focusing on the vehicle that he is in or was in or is going back into. That's not what occurred in this case. In this case, Mr. Kellogg was not doing that. He was not focusing on his vehicle. He was because there was something attached to his vehicle that he had to remove before he could leave. So he was certainly focused on his vehicle. This is not directing traffic or going through a disabled vehicle that's not attached to his vehicle. This was attached to his truck and he needed to remove it so that he could leave, get back into his truck and leave, right? Well, Your Honor, I see it as a completely different situation because here I see him focused on a different vehicle. He's focused on the vehicle he pulled out of the ditch, and that's what happened at the time. He's injured as a result of another vehicle coming along and striking the disabled vehicle. I see it as a different situation. I really do. Thank you. I have no other questions. Thank you. Thank you. You'll have two minutes in rebuttal. Mr. Belanger. May it please the Court, Your Honor, Matt Belanger for the Kellogg family. We need to, in this case, Judge Payson properly applied settled rules of New York law to rule that my client remained vehicle-oriented the entire time he was involved in pulling the Liamero vehicle out of the ditch because we remember he was using his tow truck to do that the whole time. So unlike the plaintiff in Martinez who left his tow truck on the side of the road and was walking away, Mr. Kellogg attached his tow truck to the Liamero vehicle, used the tow truck to pull it behind and was actively disconnecting the tow truck and therefore was not only vehicle-oriented but I think the trial judge properly found that he was upon the truck as that term is defined under New York law because he was touching a piece of the truck, the winch cable. And there's no question that as soon as he was done that because he told this to Liamero that they were going to get in their cars and move to a safer location. Unfortunately this accident occurred before they could do that. So I think in this case it's clear that the Martinez case does not apply because that person was doing something different. It's also clear that the cases involving people driving and directing traffic don't apply because those people lost their vehicle orientation when they performed a task that was unrelated to the vehicle and that's not what Kellogg was doing here. So the judge properly determined that he was occupying the vehicle and he's entitled to some coverage. On the PIP and the A-PIP coverage, it's impossible, quite frankly, that a person could be occupying a vehicle and not using it for the purposes of PIP and A-PIP coverage. There's no question that when he was injured he was actively disconnecting the tow truck from the William Merrill vehicle and therefore was using his truck. And under New York law, the insurance company for the vehicle you're using is responsible for the payment of first-party benefits. There's only two exceptions to that rule. One, if you're occupying another vehicle, which Kellogg was not occupying another vehicle in this case, and indeed the trial judge had ruled that he was occupying his own vehicle. Or secondly, if you're a pedestrian. Now, Michigan Miller's never argued he was a pedestrian, and of course he wasn't a pedestrian because at the time he was actively disengaging his tow truck from the William Merrill vehicle. So as a result, the trial judge, I think, was confused by Walton and Walton was merely asking a different question. Walton was not suggesting that proximate cause is necessary to determine who pays damages in a multi-vehicle no-fault case. Walton dealt with the question of is this a no-fault case at all? And in that case determined that the person who was injured was injured by a product liability claim a letter later, and not by the truck. And those cases make... Yes, I'm sorry. Go ahead and finish your thought and then I've got a couple of questions. Yes, so Walton was really drawing the line between and remember, when no fault was adopted that was a version of compensation without fault, which is not the normal rule anywhere. And so, I think what the court was concerned about in that case was making sure that a rule that was in derogation of the normal common law rule was strictly construed to apply only to situations that the legislature intended, which were motor vehicle accidents. In this case, from the beginning Michigan Millers conceded that this was a motor vehicle accident. And under the standard rules for who pays benefits it is the insurance company for the vehicle you were using and the judge made a mistake in not so ruling. Okay, now let me ask you when you got the decision from Magistrate Payson and you saw that she had made a determination that Mr. Kellogg was occupying the vehicle from the standpoint of being entitled to the sum coverage which obviously provides for the ability to seek compensation for the zone carrier for the inadequacy of the coverage by the other tort fees. Did you bring to her attention the inconsistency of her understanding of occupancy and that every status isn't insured for the additional scheduled benefits for the additional personal injury protection benefits? I did not. Okay, it would have seemed to me that had you done that because the definition of an insured for both is that it arises out of the use or operation of a vehicle and that he's not an occupant of another car, correct? I agree with you, Your Honor, and I don't know if you had a chance to read the oral argument below but we talked about this extensively and it was I think in retrospect I maybe wasn't as articulate as I could be but I simply couldn't get across the point that Walton dealt with a different issue. Let me ask you this, your opponent, and I'm going to put this to claim when he gets back up when he was talking with Judge Katz and he was talking about the fellow who was standing between the two cars and got injured and he said he should have perhaps applied to that other car I take it that he was of the view that he was an injured person under somebody's policy and I take it the point of your argument is that no fault by the regulations take that out of it. You go and make the application to your policy and I'm sure fight it out later on, right? That's exactly right and in this case your insurance policy, the vehicle that you're using or operating is responsible for the payment of no fault benefits except in those two circumstances that I talked about. One is if you're occupying another vehicle which doesn't apply here or two if you're a pedestrian which doesn't apply here. 65-313 from the Commissioner's regulations talk about that an applicant's initial source of additional personal income protection will be the same source which provides mandatory personal injury protection so under the Commissioner's regulations Kellogg was right to apply to those parties that had paid his first party benefits correct? Correct. And then it says that from that point on then it's a fight between the insurers To my knowledge that's never happened Judge Katzen asked about certification on the use occupation side of things what's your view there? I honestly believe that if this court were an appellate division and deciding whether or not to ask the Court of Appeals to look at this case they wouldn't look at it because I believe the legal issues have been well settled. I think the issues become fact based and I don't think there's a lot of confusion about what the standard is and what the rules are and in fact I think if you read both briefs both parties agree what the rules are this case was about the application of undisputed facts to those rules the plaintiff believes that the trial judge did it appropriately and the defendant believes that she didn't I don't have any further questions Judge Katzen? Yes, thank you I want to ask you a question about proximate causation and that this starts with a question of whether Kellogg's injuries arose out of the use or operation of his tow truck and you say, as I understand it and correct me if I'm misunderstanding, that proximate causation is irrelevant once it's acknowledged or conceded that an accident falls within the scope of the no-fall law this goes to some of the exchange with Judge Wesley but I'm having a little difficulty seeing how this rule works when an injured person is neither the operator nor the occupant of an insured vehicle so in such cases it would seem that the injured person must seek first party benefits from the insurer of the vehicle out of whose use or operation the injury arose and here's really my question if proximate causation is irrelevant then how do you identify the vehicle out of whose use or operation the injury arose could you help me understand that? Sure I mean I think the statute helps but here's the reality if you're using a vehicle or operating a vehicle then your insurer is the first party provider of first party benefits if you're a pedestrian or a bicyclist or somebody that's not connected to a vehicle then it's the vehicle that causes the accident and that's just part of the statute the problem with the proximate cause language is in Walton they're talking about a single vehicle and so they're talking about it being proximate cause the vehicle needs to be somehow a proximate cause in order to trigger liability without fault and that language gets very confusing and I'll be the first to admit that but once you understand that what Walton was was dealing with a separate question then the statutory regulations and statute and the regulations regarding the no fault law answer your question your honor which is that in a situation like this even though everybody will concede the cause of this accident was the third vehicle that struck the end of Mr. Leomero's vehicle and ultimately struck Mr. Kellogg Mr. Leomero when his injuries come from the insurance carrier of the vehicle he was operating at the time which is his vehicle even though that vehicle had nothing to do with this accident and my client's injuries come from I mean first party benefits come from Michigan Mills because they were the insurer of the vehicle he was using at the time use or operation is the trigger causation has nothing to do with it because that's a now you're taking a negligence concept a fault based concept and putting it into a no fault situation now let me ask you about the use of the interpretation of upon so as to whether Kellogg was upon the truck at the time of the accident the district court needs the word upon rather expansively if you've got case law that suggests that this is a more difficult question in Cologne the New York Court of Appeals distinguished between being in or upon a vehicle which the court said or characterized and I quote as the normal denotation of the word occupying and in quote entering into or alighting from a vehicle which the court viewed as an extension of that term now you cite the department's decision in Rosado as supporting an expansive interpretation of upon but the claimant in Rosado was reaching inside his truck when he was hit which seems to comport with the rather common sense meaning of in or upon are there any cases that held the term upon as distinct from the broader term occupying that say that they should be interpreted expansively well Cologne says that the term itself should be interpreted expansively in favor of coverage because it is as the court said and I think I'm quoting here the policy behind the statute is to secure to innocent victims of motor vehicle accidents recompense for injuries and financial loss inflicted upon them and thus the more expansive the reach of the term occupying the broader the sweep of coverage and that's so that's the general direction but in this case let's remember one thing that the winch cable is part of the tow truck it was connected to the tow truck and it's the whole purpose for having a tow truck and so to the extent what the judge ruled was that he was either in direct contact with it and we won't know because he has a brain injury and he can't tell us but he was either in direct contact with it was just about to grab it or was had just let it go and therefore she I think quite rightly determined that that meets an expansive definition of the term upon more importantly it also means that he was vehicly oriented such that he was occupying the truck so going for vehicle oriented and its meaning are you arguing that if Kellogg had been struck right before attaching the winch cable then he would not have been occupying a tow truck no he was occupying his tow truck I think it's immaterial whether he was actually in physical contact with the winch cable because he was the two cars were connected the truck and the Leomero vehicle were connected and he was actively disconnecting a piece of the tow truck from the Leomero vehicle which made him vehicly oriented those two vehicles were connected and he could not go about the rest of his job until he disconnected them and that's what he was doing I can't even how would you distinguish this case from Martinez Martinez so this is if Mr. Kellogg had gotten to the scene of the accident and he was walking away from his tow truck and he was going down to Mr. Leomero's vehicle and then that third vehicle came and hit him then that is Martinez he wasn't touching the truck he wasn't using the truck he had merely the truck was what got him to the scene at that point he became a pedestrian he was walking from his truck to another vehicle but that's not what happened here that may have happened earlier but that's not when Mr. Kellogg was injured instead he put the loop to the Leomero vehicle he connected his tow truck to the Leomero vehicle then he operated the winch from the tow truck in order to pull the Leomero vehicle out of the ditch and he was in the process of disconnecting Leomero that to me is so much more connected to the tow truck than was Mr. Martinez who was walking away from it for all we know to change a tire and may not have been near his truck for 20 minutes thank you Judge Bianco both of you covered my questions I have no questions, thanks thank you alright we will hear from Mr. Culhane in two minutes in rebuttal just very briefly and then I'll take questions if you have any I was asked a question earlier about if Mr. Kellogg had stood up and had turned towards his vehicle and turned towards his tow truck and was beginning to walk back would that be occupying of being upon his vehicle and the suggestion and the question and the questions never really suggest an answer but it was I guess suggested that that would be no different than what he was doing it seems my colleague concedes that if he was walking back to his vehicle or walking towards the disabled vehicle in order to take the winch off the vehicle he would be a pedestrian he wouldn't be occupying his vehicle that seems to be what he just said in his last comment and that's how we try to distinguish Martinez and I suggest that Martinez is indistinguishable here Martinez is a fellow division case right? yes it is your honor it's a fellow division case when was that decided? it was decided give me a second I'm sorry I don't have that I have it I have it right here I can answer the question I thought I had it right here I had it here don't worry don't either one of you trouble yourself Mr. Cohane 2002 Mr. Cohane you said in answer to the question from Judge Katzman about the pedestrian or the fellow who was walking and standing between two cars and the cars get rear ended and he gets injured that he should apply to the car that rear ended it why why wouldn't the way the statute works is that you apply to the car that you were using or operating right? yes which he didn't do which is why the benefits were denied well except that you paid the first party benefit we had that discussion earlier I appreciate that and you would agree with me that the regulations say quote applicants initial source additional personal injury protection benefits will be the same source I do agree I know the regulation well that's the commissioners interpretation what the statute requires I know the regulation well but that doesn't concede that the person or the carrier from whom benefits were received actually owed those benefits ok fair enough I'd be happy to if you have any questions I'd rather use my rebuttal time to do that thank you very much thank you very much thank you both thank you very much the court will reserve decision oh I'm sorry this is Matt Belanger I just wanted to say how much I appreciate the fact that you guys let us do this the courts let us do this this way and I really appreciate your employees who have to come to work every day and don't have this benefit so thank you very much thank you very much and we we are grateful to our employees as well the final case on the calendar Brock versus Lesko Fair and Bob Roshi is on submission and with that we are done and the clerk will adjourn court